IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANTHONY HUNT, | CASE NO. 4:24-CV-01820-JPC |
| Petitioner, | JUDGE J. PHILIP CALABRESE |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN ANTHONY DAVIS, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

## INTRODUCTION

With the aid of counsel, Petitioner Anthony Hunt, a prisoner in state custody, seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction under § 2254(a) and the matter is referred to me to prepare a Report and Recommendation.[1] (Non-document entry of Jan. 10, 2025). Respondent Warden Anthony Davis, as Warden of the Trumbull Correctional Institution (hereinafter, the State), filed the Return of Writ with the state court record. (ECF #6). Mr. Hunt filed a Traverse and the State responded with a surreply. (ECF #13, 14).

Challenging his convictions for felonious assault and having a weapon while under a disability, Mr. Hunt asserts two grounds for relief. As outlined below, I recommend the District Court **DENY** Grounds One and Two, **DISMISS** the petition, and **DENY** a certificate of appealability (COA) on all grounds.

---

[1]     This matter was originally referred to Magistrate Judge Reuben Sheperd who recused himself on January 10, 2025. (ECF #7).

PROCEDURAL HISTORY

**A.    State court factual findings**

The Ohio Court of Appeals, Eighth Appellate District, set forth the operative facts here,

which are presumed correct unless Mr. Hunt rebuts them by clear and convincing evidence. *See*

28 U.S.C. § 2254(e)(1). On reconsideration, the Eighth District determined:

> {¶3} Hunt was charged with one count of aggravated murder (Count 1), two counts
> of murder (Counts 2 and 3), two counts of felonious assault (Counts 4 and 5), one
> count of tampering with evidence (Count 6), one count of having a weapon while
> under disability (Count 7), one count of illegally possessing a firearm in a liquor-
> permit premises (Count 8), and two counts of aggravated riot (Counts 9 and 10). The
> charges were brought against Hunt in connection with the shooting death of
> Ge'Ongela Rivers ("Rivers") that occurred at My Friends Restaurant in Cleveland,
> Ohio, on March 22, 2021. Hunt exercised his right to a jury trial on all counts except
> Count 7, which was tried to the court.
>
> {¶4} Skyla Johnson ("Johnson"), Hunt's girlfriend, testified at trial that she was living
> with Hunt and his brother, Keondre Austin ("Austin"), at the time of the shooting.
> In the early morning hours of March 22, 2021, Johnson, Hunt, and Austin took an
> Uber to My Friends Restaurant in Cleveland. At the restaurant, they sat in a booth
> and ate some food.
>
> {¶5} Meanwhile, Rivers and her friend, Antonio Ortiz ("Ortiz"), entered the
> restaurant to order food to go. They were sitting on stools at a counter near the front
> of the restaurant looking at a menu when they began to interact with Austin, who
> passed them as he was going outside to see if the Uber Johnson had called was outside
> the restaurant.
>
> {¶6} While Austin was speaking with Ortiz, Johnson went outside to smoke a
> cigarette, and Hunt, who remained at the booth, began putting leftover food into
> carry-out boxes. Hunt testified that as he was packing up the food, he noticed that
> Austin and Ortiz were engaged in conversation that was not "positive." Cetewayo
> Fuller ("Fuller"), a patron from a nearby booth, also stated that the tone of the
> conversation was "aggressive." Nicole Hanna ("Hanna"), a server who was standing
> at the counter ringing up a to-go order at the time of the shooting, testified there was
> "tension" between Ortiz and Austin. Neither Johnson nor Hunt knew Rivers or Ortiz
> prior to the shooting incident. Nevertheless, Hunt became concerned for Austin's
> safety due to the tone of the conversation.
>
> {¶7} Hunt testified that he called Austin back to the booth, in an apparent effort to
> stop him from engaging with Ortiz. Surveillance video, admitted into evidence as

2

state's exhibit No. 602 shows that Austin responded to Hunt and began walking back to the booth but then turned back toward Ortiz and Rivers. State's exhibit No. 602 shows that when Austin walked back toward Ortiz, Ortiz stood up and began walking toward the front door to the restaurant. Austin followed Ortiz, and Hunt followed Austin.

{¶8} The video shows that Ortiz walked toward the front of the restaurant and turned toward Austin while drawing a firearm from inside his jacket. Hunt, who was standing behind Austin, almost simultaneously drew a firearm from his inside pocket. Austin was unarmed and Hunt knew he was unarmed. According to Tom Ciula ("Ciula"), the video forensic analyst with the Cleveland Police Department who authenticated state's exhibit No. 602, the video evidence establishes that Ortiz began shooting three twenty-fifths of a second before Hunt began shooting. Both Ortiz and Hunt fired numerous shots at each other. Ortiz shot from behind a wall in the vestibule area of the restaurant, and Hunt fired several shots toward the door, where Ortiz was taking cover. At some point during the shooting, Hunt was shot in the ankle and fell to the floor. In that moment, Ortiz ran out the front door of the restaurant to a car parked in the parking lot and fled the scene, leaving Rivers alone in the restaurant.

{¶9} Meanwhile, Hunt realized he had been shot but continued shooting. He explained at trial that he had heard numerous gunshots, he did not know where all the bullets were coming from, and decided to shoot Rivers, who was behind him because he thought the bullets may have also come from her. He explained:

> Well, I couldn't understand where the gunshots were coming from. And when I finally realized that I was shot, I heard movement behind me, and I really didn't have enough time to see who that was behind me or if they had a firearm or not before I had to make a split[-]second decision on whether or not to possibly end the threat that was behind me.

The video evidence confirms that Hunt quickly decided to shoot Rivers, who was unarmed and running away.

{¶10} Upon being shot, Rivers initially fell to the floor but subsequently stood up and walked outside the restaurant where she collapsed. An autopsy revealed that Rivers sustained two gunshot wounds. One wound was composed of injuries to her liver, left kidney, pancreas, abdominal arteries, and portal vein. The other wound was composed of injuries to Rivers's skeletal muscle and cecum. According to Dr. David Dolinak, a deputy medical examiner with the Cuyahoga County Medical Examiner's Office, Rivers died as a result of these injuries. Austin sustained six gunshot wounds and also died from his injuries.

{¶11} Hunt argued at trial that he was acting in self-defense when he shot Rivers. Detective Robby Prock ("Det. Prock") of the Cleveland Police Department testified that he collected 21 casings from Ortiz's FN five-seven firearm, most of which were recovered from the vestibule area of the restaurant. Det. Prock also recovered 14 cartridge casings from Hunt's Glock. The video evidence demonstrates that all of the shooting occurred during a six-second timeframe.

{¶12} The trial court granted a defense motion for acquittal on Counts 8, 9, and 10, which alleged one count of illegal possession of a firearm in a liquor-permit premises charge and two counts of aggravated riot. Defense counsel requested jury instructions on self-defense, transferred intent, and on lesser-included offenses. The court denied counsel's request for a lesser-included-offense instruction but provided instructions on self-defense and transferred intent.

{¶13} The jury found Hunt guilty on Counts 4 and 5, which alleged felonious assault and identified Rivers as the victim, but it acquitted him of the other charges. The court found Hunt guilty of having a weapon while under disability as alleged in Count 7. The court merged Counts 4 and 5 and sentenced Hunt to a minimum of eight years on Count 5, plus three years on an attendant firearm specification for an aggregate minimum prison term of 11 years. The court sentenced Hunt to 36 months on the having weapons-while-under-disability charge and ordered the 36-month sentence to be served consecutive to the sentence on Count 5, for an aggregate minimum 14-year prison term. And, pursuant to the Reagan Tokes Law, the court sentenced Hunt to an indefinite prison term of 14–18 years in prison.

(ECF #6-1 at PageID 212-16 (citations omitted); *see also State v. Hunt*, No. 111892, 2023 WL 4010521, at *1-3 (Ohio Ct. App. June 15, 2023), *appeal not allowed*, 220 N.E.3d 814 (Ohio 2023) (table)).

B.    **Direct appeal**

Through counsel, Mr. Hunt timely appealed his convictions to the Eighth District where he raised five assignments of error:

1.    [Mr. Hunt] was denied the due process of law under the United States and Ohio Constitutions [due to] errors in jury instructions on transferred intent and mistake of fact, and missing instructions on reckless assault.

2.    Hunt was denied due process by way of inconsistent verdicts.

3.    Prosecutorial misconduct and/or ineffective assistance of counsel in closing arguments.

4

    4.      The State of Ohio presented insufficient evidence that [Mr. Hunt] did not act in self-defense.

    5.      The manifest weight of the evidence did not support a conviction of felonious assault.

(*See* ECF #6-1 at PageID 99) (cleaned up). On May 11, 2023, the Eighth District affirmed. (*See id.* at PageID 165).

Mr. Hunt timely sought reconsideration under Ohio Appellate Rule 26(A), arguing the Eighth District applied the wrong standard of review to the first assignment of error and, as to the other assignments of error, made factual mistakes and did not address arguments made. (*Id.* at PageID 191-99). On June 15, 2023, the Eighth District granted reconsideration on the first assignment of error only, vacated its prior decision, and issued a new decision again affirming Mr. Hunt's convictions. (*Id.* at PageID 209, 211).

On July 31, 2023, through counsel, Mr. Hunt timely appealed to the Supreme Court of Ohio, advancing five propositions of law:

    1.      A defendant acts in self-defense when a defendant honestly believes they are in imminent danger of death or serious bodily harm, even when that belief, while grounded in the factual circumstances of the case, is mistaken. When the defendant negligently harms another as a result of such a mistaken believe, self-defense will still apply.

    2.      SB 201 is unconstitutional on its face and as applied.

    3.      Defense counsel is ineffective when counsel fails to object to prosecutorial arguments that incorrectly limit the application of the doctrine of self-defense.

    4.      When the jury's verdict in one count reveals that the jury believed the defendant acted in self-defense, a guilty verdict for a lesser-included offense contained in a separate count of the indictment denies the defendant due process under the Fourteenth Amendment and Article I, Section 2 of the Ohio Constitution.

5. When a material question of fact is raised regarding the mental state of a defendant using proportionate force in self-defense, a trial court's failure to give an instruction on reckless assault denise the defendant due process under the Fourteenth Amendment and Article I, Section 2 of the Ohio Constitution.

(ECF #6-1 at 236-37, 240). On April 2, 2024, the Supreme Court of Ohio declined to hear his appeal. (*Id.* at PageID 268; *see also Hunt*, 220 N.E.3d 814).

### FEDERAL HABEAS PETITION

In his petition before this Court, Mr. Hunt raises two grounds for habeas relief:

**GROUND ONE:** Petitioner was denied due process of law by the trial court's failure to properly instruct the jury on self-defense.

**Supporting Facts:** Petitioner, who had just been shot, mistakenly believed that the assailant's companion was working in concert to harm him, and shot and killed the companion. Instead of instructing the jury that self-defense required both an objective and subjective standard, the trial court instructed the jury that Petitioner, to be entitled to a claim or self-defense, must "reasonably and honestly believe" that he was about to be killed or receive great bodily harm.

**GROUND TWO:** Petitioner was denied his Sixth Amendment right to the effective assistance of trial counsel by counsel's failure to object to prosecutorial misconduct in closing argument.

**Supporting Facts:** In closing argument, the prosecutor asserted that Petitioner's self-defense argument could be rejected if he acted negligently or recklessly, in contradiction to the statutory requirements of the offense. Defense counsel offered ineffective assistance by failing to object to the argument.

(ECF #1 at PageID 3-4).

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Hunt's habeas petition. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" so AEDPA acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v.*

*Titlow*, 571 U.S. 12, 19 (2013). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Habeas courts review the last-explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991).

Under AEDPA, habeas relief cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

For the purposes of § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court's decision is "contrary" to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Id.* at 405. The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Id.* A state court does not act contrary to Supreme Court precedent when the precedent of the Supreme Court is ambiguous or nonexistent. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

7

A state court's decision involves an "unreasonable application" of Supreme Court precedent if (1) the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the state prisoner's case or (2) the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. A state-court decision must be "objectively unreasonable" to have unreasonably applied Supreme Court precedent which requires more than the decision being "erroneous" or "incorrect." *See id.* at 409-11. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), a state court's factual determinations stand unless they too are objectively unreasonable in light of the evidence presented in state court. *See Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Under AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct" unless the petitioner offers clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2554(e)(1).

Comity principles also require federal courts to defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

ANALYSIS

1.   **Ground One lacks merit because even if the jury instruction on self-defense were faulty, Mr. Hunt has not demonstrated the instruction violated clearly established federal law.**

In Ground One, Mr. Hunt argues the trial court violated his due-process rights by erroneously instructing the jury that self-defense required a defendant reasonably and honestly believe that death or great bodily harm would occur when the proper instruction was that a defendant must subjectively believe he is in danger and that belief must be objectively reasonable. (ECF #1 at PageID 3; ECF #13 at PageID 1618-20). The State responds that the state courts determined the instruction was correct under state law and Mr. Hunt has not shown the instruction rendered the trial fundamentally unfair or violated the United States Constitution. (*See* ECF #6 at PageID 50-51).

The correctness of a jury instruction typically is a matter of state law. *Keahey v. Marquis*, 978 F.3d 474, 478 (6th Cir. 2020). To warrant habeas relief, a petitioner must show his "conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*,

502 U.S. 62, 68 (1991). Claims that allegedly erroneous jury instructions violate federal

constitutional guarantees of due process are subjected to heightened scrutiny because the Supreme

Court has cautioned that the category of jury instructions rising to a due process violation is drawn

"very narrowly." *Id.* at 72-73. The relevant inquiry is "whether the ailing instruction by itself so

infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*,

414U.S. 141, 147 (1973); *see also Keahey*, 978 F.3d at 478 (holding that petitioner "must show that

the trial judge not only misread state law but also misread it so badly that it violated the

[Constitution]").

> Mr. Hunt challenges this instruction:

> Tests for reasonable grounds and honest belief: In deciding whether the Defendant
> had reasonable grounds to believe and an honest belief that he was in imminent or
> immediate danger of death, you must put yourself in the position of the Defendant,
> with his characteristics, his knowledge or lack of knowledge, and under the
> circumstances and conditions that surrounded him at the time. You must consider
> the conduct of Ge'Ongela Rivers and/or Antonio Ortiz and decide his or her . . . acts
> and words caused the Defendant to reasonably and honestly believe that the
> Defendant was about to be killed or receive great bodily harm.

(ECF #6-7 at PageID 1481).

> Mr. Hunt argues the state court "conflated the subjective and objective components of self-

defense; essentially, it required the 'honest belief' to be objectively reasonable." (ECF #13 at

PageID 1622). He advances several cases to argue the instruction was incorrect under Ohio law.

(*Id.* at PageID 1618-19). But the state courts already rejected this argument and held the

instruction was "an accurate statement of the law relative to the second element of a self-defense

claim" and was "virtually identical" to another instruction the Supreme Court of Ohio previously

upheld. (*See* ECF #6-1 at PageID 221-23) (citing *State v. Thomas*, 673 N.E.2d 1339, 330-31 (Ohio

1997)). Federal habeas courts do not function as another state appellate court reviewing state

courts' decisions on state law. *See Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). Mindful of this role, this Court need not decide whether the instruction was correct as a matter of state law because even if erroneous, the instruction did not violate clearly established federal law.

As discussed above, clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 71-72. It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams*, 529 U.S. at 412. Thus, Mr. Hunt must show the erroneous instruction "violated concrete Supreme Court holdings," "not generalized principles." *Keahey*, 978 F.3d at 478 (citing *Marshall v. Rodgers*, 569 U.S. 58, 61 (2013) and *Woods v. Donald*, 575 U.S. 312, 318 (2015)).

Mr. Hunt cites *Cupp*, 414 U.S. at 147, to assert the instruction "so infected the entire trial that the resulting conviction violates due process." (*See* ECF #13 at PageID 1621, 1623). Beyond citing *Cupp*'s generalized principle, Mr. Hunt offers just one case, *Barker v. Yukins*, 199 F.3d 867, 876 (6th Cir. 1999), as an example of where an erroneous self-defense instruction warranted habeas relief. (ECF #14 at PageID 1621-22). But *Barker* is a Sixth Circuit decision and the Supreme Court has held "[Sixth Circuit] precedent does not constitute 'clearly established Federal law,' as determined by the Supreme Court" under 28 U.S.C. § 2254(d)(1). *See Parker v. Matthews*, 567 U.S. 37, 48-49 (2012). Therefore, Sixth Circuit precedent "cannot form the basis for habeas relief under AEDPA" either on its own or "on the ground that they merely reflect what has been 'clearly established' by [the Supreme Court's] cases." *Id.*

Even if *Barker* alone could provide the basis for habeas relief, *Barker* does not apply to Mr. Hunt's situation. In *Barker*, the Sixth Circuit held that a trial court's failure to give a self-defense instruction specifically stating the defendant was justified in using deadly force to repel a rape

11

under Michigan law violated the petitioner's due-process rights and rendered the trial fundamentally unfair. *Id.* The Michigan Supreme Court held the jury instruction was erroneous under Michigan law, but the error was harmless because no reasonable juror would have believed the defendant's claim of self-defense. *Id.* at 870. The issue in *Barker* was thus "whether, under [AEDPA], the Michigan Supreme Court's finding of harmless error was contrary to, or involved an unreasonable application of, federal law." 199 F.3d at 871-72. In contrast, as noted above, Ohio courts found the jury instruction given at Mr. Hunt's trial was correct under Ohio law and did not make a harmless-error finding. Thus, *Barker*'s holding that the Michigan court violated federal law in its harmless-error analysis is inapplicable here. *See Gimotty v. Elo*, 40 F.App'x 29, 36 (6th Cir. 2002) (distinguishing *Barker* on this basis).

I thus recommend the District Court **DENY** Ground One as without merit.

2.    **Ground Two lacks merit because the state court reasonably rejected Mr. Hunt's ineffective-assistance claim.**

In his second ground, Mr. Hunt argues his trial counsel provided constitutionally deficient assistance by not objecting to the prosecutor's remarks during closing argument conflating the subjective and objective components to self-defense to suggest the jury could reject Mr. Hunt's self-defense theory if he acted negligently or recklessly. (*See* ECF #1 at PageID 3; ECF #13 at PageID 1622-23). The State responds that the state court's decision receives AEDPA deference and it applied the controlling federal law and reasonably rejected Mr. Hunt's ineffective-assistance claim. (ECF #6 at PageID 52-53).

As noted earlier, AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell*, 543 U.S. at 455 (citation and quotation omitted). Accordingly, Mr. Hunt must demonstrate the Eighth

District's adjudication of his ineffective-assistance claim either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *See* 28 U.S.C. § 2254(d).

The two-part test in *Strickland v. Washington*, 486 U.S. 668 (1984), is the clearly established federal law governing ineffective-assistance claims. This standard requires the habeas petitioner establish (1) counsel's representation fell below an objective standard of reasonableness based on all the circumstances in the case, such that the attorney did not function as "counsel" guaranteed by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88. To satisfy the deficiency prong, the habeas petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 668. To satisfy the prejudice prong, the habeas petitioner must show "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome." *Id.* at 694.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *See Harrington*, 562 U.S. at 105. First, the standards of *Strickland* and § 2254(d) are both highly deferential. *See Strickland*, 486 U.S. at 689; *Lindh*, 521 U.S. at 333, n.7. When both apply, the ordinary deference in habeas review is "doubly so." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Second, unreasonableness under *Strickland* is different from unreasonableness under § 2254(d). *Harrington*, 562 U.S. at 105. When § 2254(d) applies, the question is not whether counsel's actions were reasonable. *Id.* Instead, the question is whether a

reasonable argument exists that counsel satisfied *Strickland*'s deferential standard. *Id.* Because the *Strickland* standard is a general one, the range of reasonable applications is substantial. *Mirzayance*, 556 U.S. at 123.

Mr. Hunt argues his counsel was ineffective for not objecting when the prosecutor asserted during closing argument that the jury could reject his self-defense argument if it found he acted negligently or recklessly. (*See* ECF #1 at PageID 4; ECF #13 at PageID 1622-23). The Eighth District addressed this claim alongside Mr. Hunt's standalone claim for prosecutorial misconduct for that statement:

> {¶45} In the third assignment of error, Hunt argues the state engaged in prosecutorial misconduct by impermissibly asserting during closing argument that Hunt should be subject to a negligence or recklessness standard when evaluating his claim of self-defense.

> * * *

> {¶47} Hunt argues, in the alternative, that because defense counsel failed to object to the prosecutorial misconduct during trial, he was deprived of his constitutional right to the effective assistance of counsel. To establish ineffective assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he or she was prejudiced by that deficient performance. In the context of ineffective assistance of counsel, prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

> {¶48} Hunt objects to the following closing remarks by the prosecutor:

> > I am not saying that Anthony Hunt needs to get up off the floor and dust himself off and have a cup of coffee and properly assess the situation. That's not what I am saying. If you take one half second more, you're already turned, already looking at Ms. Rivers as she's running away. Her back is turned. Just take that extra half second. It's your responsibility. You're the one claiming to be acting in self-defense. The situation is unfolding too quickly because he chose for it to unfold too quickly. The harm that Mr. Ortiz causes is reprehensible and distinct from any harm that you could possibly fathom Ms. Rivers had caused to him. You need to slow it down, not

the situation. You control the situation. That's a test of reasonableness, my friends. Just one more second, and she's alive today, and we might not be here. It's not reasonable to make assumptions in situations like this.

Hunt contends these statements lowered the state's burden of proof for conviction. As previously stated, defense counsel failed to object to these remarks and thus forfeited all but plain error.

{¶49} Hunt argues the prosecutor's statements subjected him to a negligence standard of reasonableness, which was lower than the standard that should have applied to him. However, Hunt fails to identify and explain the standard he claims should have been applied to him instead. Moreover, as previously stated, the reasonableness of a defendant's actions when acting in self-defense involves both a subjective and objective component. With respect to the objective component, *Thomas* holds that the jury must consider "all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack" to determine whether he reasonably believed that he was imminent danger when he acted in self-defense.

{¶50} The prosecutor argued that Hunt had a duty to act reasonably. The prosecutor acknowledged that a defendant may defend himself, but he argued that the defendant cannot unreasonably kill the people around him even though he is under attack. To hold otherwise would negate the objective reasonableness element of a self-defense claim. The prosecutor noted that Rivers had her back turned to Hunt because she was running away when he shot her. Thus, the prosecutor was asking the jury to consider whether Hunt's decision to shoot her was objectively reasonable under these circumstances. There is nothing unfairly prejudicial about this argument because it comports with the objective standard articulated in *Thomas* and is, therefore, consistent with the law on self-defense.

(ECF #6-1 at PageID 229-31; *see also Hunt*, 2023 WL 4010521, at *9-10) (citations omitted).

As discussed above, under the doubly deferential standard of review, Mr. Hunt must show the state court's application of *Strickland* was unreasonable—in other words, he must show no reasonable argument exists that counsel satisfied *Strickland*'s deferential standard. *See Harrington*, 562 U.S. at 105. Mr. Hunt argues that counsel's failure to object was deficient and prejudicial because:

Again, self-defense was the only issue in this case. There is no reasonable trial strategy that would have allowed the prosecutor to conflate, as the judge did, the objective

> and subjective components of self-defense and allow the jury to conclude that he was
> guilty of felonious assault if [he] was merely mistaken as to the threat that Rivers
> presented.

(ECF # 13 at PageID 1623). But the Eighth District concluded the prosecutor was not conflating the objective and subjective components of self-defense, rather "the prosecutor was asking the jury to consider whether Hunt's decision to shoot [Ms. Rivers] was objectively reasonable." (ECF #6-1 at PageID 231). This factual finding is presumed correct unless Mr. Hunt proves otherwise by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Mr. Hunt offers no argument or evidence to suggest the state court incorrectly read the transcript of closing argument. Thus, there remains a reasonable argument that counsel satisfied *Strickland*'s deferential standard because an objection that the prosecutor conflated the elements of self-defense would be meritless. *See Piontek v. Palmer*, 546 F.App'x 543, 551 (6th Cir. 2013) ("Defense counsel does not perform deficiently under *Strickland* by failing to undertake futile tasks or raise meritless claims.").

Mr. Hunt also argues "the court's erroneous instruction, combined with defense counsel's ineffective assistance in failing to object to the prosecution's misconduct in closing argument, so infected the entire trial that the resulting conviction violates due process." (ECF #13 at PageID 1623) (quotation omitted). A petitioner is not entitled to habeas relief based on the cumulative weight of errors that individually do not support habeas relief. *See Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."). Thus, to the extent Mr. Hunt seeks to cumulate Grounds One and Two, such an argument does not entitle him to habeas relief.

I thus recommend the District Court **DENY** Ground Two as without merit.

16

CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a COA and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not needed to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Hunt has not made a substantial showing that he was denied any federal constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are meritorious federal constitutional claims. I thus recommend the District Court **DENY** Mr. Hunt a COA.

CONCLUSION AND RECOMMENDATION

For these reasons, I recommend the District Court **DENY** Grounds One and Two as without merit and **DISMISS** the petition. I further recommend the District Court **DENY** Mr. Hunt a COA on all grounds.

Dated: January 6, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).